UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00190-TBR

UNITED PROPANE GAS INC.                                              Plaintiff

v.

PINCELLI & ASSOCIATES INC.                                          Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant, Pincelli & Associates Inc.'s (Pincelli), Motion to Dismiss. (Docket No. 5.) Plaintiff, United Propane Gas Inc. (UPG), has responded. (Docket No. 6.) Defendant has replied. (Docket No. 7.) This matter is now fully briefed and ripe for adjudication. For the following reasons and consistent with the below opinion, the Court will **DENY** Defendant's Motion to Dismiss. (Docket No. 5.)

BACKGROUND

UPG alleges that through email communication, between UPG's President Eric Small and Pincelli's Vice President of Operations Kristin Ford, UPG and Pincelli formed an agreement that Pincelli would sell and UPG would buy propane at 97 cents per gallon for 50,000 gallons per week for one year. (Docket No. 1, at 2-3.) UPG alleges that Pincelli has refused to honor this agreement and sell UPG propane under the agreed terms. (Docket No. 1, ¶ 20.) UPG brings claims for breach of contract and breach of the covenant of good faith and fair dealing. (Docket No. 1, at 3-4.)

STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' - 'that the pleader is entitled to relief.'"  *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

DISCUSSION

Defendant Pincelli moves to dismiss UPG's Complaint on the basis that there was not an enforceable contract.  (Docket No. 5, at 1.)  Specifically, Pincelli argues: (1) there was not a meeting of the minds; and (2) the email(s) referenced by Plaintiff does not satisfy the statute of frauds.  (Docket No. 5, at 1.)  In support of its motion to dismiss, Pincelli attaches emails from August 1st to August 6th of 2013, (Docket No. 5-2), which are referenced in the Complaint and are the basis for Plaintiff's contract claims.

The Court may view the emails because Plaintiff references them in the Complaint.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2000) (stating that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").  Below, in chronological order, are the emails between Kristine Ford of Pincelli and Eric Small of UPG between August 1st and August 6th of 2013:

> Kristin Ford (Pincelli) August 1 at 3:15 PM:
> Eric-
> Just saw that the prices were creeping up a little.  We are supposed to sign a 2m gallon (20,000/week) deal with Holston

tomorrow for .96 gallon flat for the year starting in Oct 1. Are you sure you're not interested…

Eric Small (UPG) August 1 at 3:45 PM
    we could do 2-4m at 92-94 if that is the cheapest you have offered or will offer.

Eric Small August 6 at 9:17 AM:
    WE NEED TO NAIL THIS DOWN !

Eric Small August 6 at 10:46 AM:
    LAST CHANGE, 95 fixed.. yes it no

Kristin Ford August 6 at 10:10 AM:[1]
    .97/gallon. That's 1 cent more than MBV mid summer and 3 cents less than we discussed back in May. That is also the best deal/cheapest that we will sell to anyone and in this market now, you can have it in writing. We can do 50,000 gallons per week.

Eric Small August 6th at 11:27 AM:
    Thank you so much but we don't pay more than competitors usually less..

Kristin Ford August 6th 10:30 AM:
    You must've misunderstood me. You would be paying less.

Eric Small August 6th at 11:48 AM:
    Holston is getting it for less

Kristin Ford August 6th at 10:53 AM:
    No they're not. They adjusted their summer volume down because they could only take so much so we moved the price up 3 cents per gallon.

Eric Small August 6th at 12:18 PM:
    Ok lets do it thanks

Kristine Ford August 6th at 11:20 AM:
    Ill be back in the office about 6 tonight. Ill send you the contract.

---

[1] It appears there was a time zone difference between Kristin Ford and Eric Small's locations, which would explain why Ford's responses to Small's emails would, in some instances, appear to be occurring *before* Small actually sent said emails. (*See* Docket No. 5-2.)

> Eric Small August 6th at 12:32 PM:
> great thanks
>
> Kristin Ford August 6th at 5:48 PM:
> Attached is the contract discussed today along with the agreed terms- If we are in agreement I can fill in the appropriate "buyer" information. I will be in the office after 10:30 tomorrow morning, or you can get me on my cell. I would like it if you or Charlie could come out to the plant in Manchester within the month. We will start production in mid-September, but to make sure that we are 100% in production and HD5 quality, I pushed the start date to October 15.[2]

(*See* Docket No. 5-2.) Plaintiff's Complaint states:

> 18. Small responded by email dated August 6, 2013 stating "ok lets do it thanks."
> 19. As evidenced by the written email exchanges, the parties formed an agreement that Pincelli would sell and UPG would buy propane at 97 cents per gallon, for 50,000 gallons per week for one year.
> 20. Pincelli has refused to honor such agreement and has refused to sell UPG the propane under the agreed terms.

(Docket No. 1, at 5.)

I.  Meeting of the Minds

Defendant claims there was no meeting of the minds because it is "undisputed that the parties intended for any agreement to be contingent upon a written agreement signed by both parties." (Docket No. 5, at 5.) The Court finds that dismissal at this early stage of the litigation would not be appropriate and that Plaintiff's claim of the existence of a contract is not implausible.

---

[2] Plaintiff alleges that these were not isolated emails and that the parties exchanged "months of prior and subsequent emails and other communications," as well as draft agreements.

Defendant's case citations are distinguishable because they involve motions for summary judgment, as opposed to motions to dismiss. *See Curry v. Nestle USA, Inc.*, 225 F.3d 658, at *1 (6th Cir. 2000) (considering appeal from entry of summary judgment and applying Ohio law); *Cummins v. Opryland Productions*, 2001 WL 219696 (Tenn. Ct. App. 2001) (considering appeal from grant of summary judgment and applying Tennessee law).[3] Dismissing Plaintiff's claims would require the Court to credit Defendant's version of the events over Plaintiff's, which is inappropriate at this early stage of the litigation. Plaintiff's claim that a contract was reached based on the emails is "plausible" and, accordingly, will overcome a motion to dismiss.

II.  Statute of Frauds

Defendant also argues that Plaintiff's Complaint should be dismissed because it fails to allege a writing that satisfies Kentucky's statute of frauds.[4] Specifically, Defendant argues that the emails do not satisfy the statute of frauds under the Federal Electronic Signatures in Global and National Commerce Act (E-SIGN) or the Uniform

---

[3] *Curry* would also be distinguishable on the merits because there the Court found the confirmation expressed the intention that the agreement be formalized in a written contract and because it involves an application of Ohio law. In this case, while Defendant has argued the attachment of the Draft Contract and some qualifying language in the August 6th emails demonstrates such an intention, the Court finds that Plaintiff's claim that the parties intended to be bound before formalizing their agreement in a written document is not implausible. Furthermore, the parties did arguably formalize an agreement in a written document, albeit a crude one, through the emails. Accordingly, dismissal is not appropriate at this time.

[4] Defendant argues that because the Draft Contract provided for Plaintiff to receive propane and be invoiced for payment, the transaction must comply with KRS 371.010(9) because it is an "extension of credit." Defendant's support for this assertion is a non-binding case involving a very unique and unusual sale of goods, which provided no analysis on this issue. *See In Re Backer*, 2011 WL 3878338 (Bankr. E.D. Ky. 2011).

The Court agrees with Plaintiff that contracts for the sale of goods often provide payment terms by which the buyer is granted a period of time to pay the invoice. This alone does not necessarily convert the transaction to something other than one governed by the Uniform Commercial Code. Defendant has not cited any cases concluding these payment terms require application of KRS 371.010(9). Accordingly, the analysis is governed by KRS 355.2-201(1) of the Uniform Commercial Code. However, in any event, whether or not KRS 371.010(9) applies does not appear to be determinative because both KRS 371.010(9) and 355.2-201(1) require a "writing" that is "signed" by the party against whom enforcement is sought or by his authorized agent or broker.

Electronic Transactions Act (UETA).  (Docket No. 5, at 9.)  Kentucky courts interpret the writing requirement of the statute of frauds loosely and have determined correspondence similar to emails as sufficient to deny statute of frauds arguments.  *See, e.g., TWB Distribution, LLC v. BBL, Inc.*, 2009 WL 5103604, at *7 (W.D. Ky. Dec. 17, 2009); *Commonwealth Aluminum Corporation v. Stanley Metal Associates*, 186 F. Supp. 2d 770, 772-73 (W.D. Ky. 2001).[5]  Additionally, the UETA provides that electronically delivered documents and signatures affixed thereto can satisfy the statute of frauds.[6]  KRS 369.102(8) defines an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."[7]  All emails from Pincelli between August 1st and August 6th contained, in the signature line of the email, Kristine Ford's name.  (*See* Docket No. 5-2.)  This Court believes that Kentucky courts would find that under the right circumstances—where the intent and signature elements are present—emails can satisfy the statute of frauds.  Accordingly, the Court finds at this early stage of the litigation Plaintiff's claim of a contract is not implausible and will **DENY** Defendant's Motion to Dismiss as to the breach of contract claim.[8]

---

[5] While Defendant is correct that the cases cited do not outright state that emails may satisfy the statute of frauds—although it is implied—there is no precedent contrary to such a result.  Furthermore, KRS 369.107(3) states that "[ i]f a law requires a record to be in writing, an electronic record satisfies the law."
[6] KRS 369.102(7) defines electronic record as "a record created, generated, sent, communicated, received, or stored by electronic means."  KRS 369.102(8) defines electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."  KRS 369.107(3) states that if the law requires a "writing," an "electronic record" satisfies the law.  KRS 369.107(4) states that if the law requires a "signature," an "electronic signature" satisfies the law.
[7] KRS 355.2-201 requires a signature by the party against whom enforcement is sought.
[8] Implicit in this holding is that it is not implausible, at this time, that Kristine Ford placed her signature on the electronic records (emails) with the intent to sign the record, as would be required under KRS 369.101(8).  *Compare Sawyer v. Mills*, 295 S.W.3d 79, 88 (Ky. 2009) (finding audio recording was not an electronic signature when the intent element was missing because the recording was done

III. <u>Good Faith and Fair Dealing Claim</u>

Both parties agree that the good faith claim is derivative of Plaintiff's claim of an enforceable contract. Because the Court finds Plaintiff's claim of an enforceable contract is "plausible" at this early stage of the litigation, it will also **DENY** Defendant's Motion to Dismiss as to the good faith claim.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant Pincelli's Motion to Dismiss, (Docket No. 5), is **DENIED**.

Date:

cc: Counsel

---

surreptitiously); *see generally Feldberg v. Coxall*, 2012 WL 3854947, at *5 (Mass. Super. May 22, 2012) (finding, as issue of first impression, emails with signature block can satisfy the signature requirement of the statute of frauds); *Gillis v. Wells Fargo Bank*, *N.A.*, 875 F. Supp. 2d 728, 734 (E.D. Mich. 2012) (summarizing authority finding emails can be sufficient to satisfy the statute of frauds).