UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00190-TBR

UNITED PROPANE GAS, INC.,     PLAINTIFF

v.

PINCELLI & ASSOCIATES, INC.,     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff United Propane Gas, Inc. ("UPG") moved to compel the production of certain information by Defendant Pincelli & Associates, Inc. ("Pincelli"). [DN 70.] The Court referred the motion to Magistrate Judge King, who denied UPG's motion in part. [DN 84 (December 29, 2016 Order).] UPG now objects to the Magistrate Judge's Order. [DN 86.] Pincelli responded to UPG's Objections, [DN 90], and UPG replied, [DN 92.] Fully briefed, this matter is ripe for decision. For the reasons that follow, UPG's Objections are **SUSTAINED IN PART.**

**BACKGROUND**

UPG is a Kentucky corporation "engage[d] in the sale and delivery of propane gas to industrial, commercial, and residential users." [DN 1-1 at 4 (Complaint).] Pincelli is a Tennessee corporation "engage[d] in the business of brokering and/or selling propane gas." [*Id.*; DN 9 at 2 (Answer).] This lawsuit arises out of UPG's claim that it entered into a contract with Pincelli pursuant to which UPG would purchase propane through Pincelli from Clean Gas, Inc. ("CGI"), a supply source with a facility in located Manchester, Kentucky (the "Manchester facility"). [DN 1-1 at 4; DN 86 at 2.] UPG claims that Pincelli breached the alleged contract by failing to sell UPG propane. [DN 1-1 at 5.]

Pincelli denies that a contract was ever formed between the parties. [DN 90 at 1.] However, Pincelli asserts that, even if a contract was formed, Pincelli was excused from performing under the contract on the basis of impossibility/force majeure due to construction delays at CGI's Manchester facility which caused it not to produce any propane until May 2014. [*Id.* at 2; DN 61-1 at 1–2 (Pincelli's Motion for Summary Judgment).] During the deposition of Kristin Ford, Pincelli's Vice-President, UPG learned that Pincelli had entered into a contract to sell propane from CGI's Manchester facility to another entity, Southern States, shortly before the alleged contract between UPG and Pincelli was formed. [DN 86 at 5–6.] Pincelli did not provide propane to Southern States, however, and it paid damages to Southern States as a result. [*Id.* at 6.] Ford testified during her deposition that she could not recall the amount of damages that Pincelli paid to Southern States or the method used to calculate those damages, but stated that she possessed a spreadsheet containing that information. [*Id.* at 6 (citing Ford Deposition at 80–81).]

UPG moved to compel Pincelli to produce the spreadsheet detailing Pincelli's damages payments to Southern States, asserting that "[t]he dates and amounts of payments by Pincelli to Southern States are relevant to Pincelli's claim that no propane was sold from the facility until May, 2014." [DN 70 at 10 (Motion to Compel).] According to UPG, "[i]f such payments are inconsistent or non-existent, that would tend to indicate that product was being provided to Southern States from the facility," contrary to Pincelli's assertions. [*Id.* at 10–11.]

Judge King denied UPG's motion to compel with regard to the spreadsheet. [DN 84 at 14–17.] Specifically, Judge King explained as follows:

> Defendant has already provided sworn testimony of two individuals who were familiar with the CGI Facility regarding the lack of propane production at the Facility through May, 2014 when it became operational. (Docket #79 at 12). UPG is not allowed to "fish" for information that is absolutely irrelevant on its face and

> highly unlikely to lead to anything relevant in the future. There are likely various other sources of evidence including suppliers of equipment and other Facility maintenance and construction suppliers which could affirmatively establish whether or not propane was being produced at the time Pincelli claims it was not. There is no need for UPG to obtain information relating to payments to Southern States (if any) which would at best only indicate that Southern States had been paid by Pincelli or CGI for *something* during the relevant time period. The existence or non-existence of payments, dates of payments, and amounts of payments made by Pincelli or CGI to Southern States does nothing to prove or disprove the existence of propane at the CGI Facility prior to May 2014.

[*Id.* at 15–16.] As the Court will explain below, it disagrees that the spreadsheet is "absolutely irrelevant" to any claims or defenses in this case, and it will therefore **SUSTAIN IN PART** UPG's Objections.

**STANDARD**

Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court referred all discovery-related disputes to Magistrate Judge King. When a party timely assigns error to a magistrate judge's nondispositive order, this Court "has authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). Under that standard, a magistrate judge's determination must be affirmed unless the objecting party demonstrates that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (implementing statutory directive). "The 'clearly erroneous' standard applies only to factual findings made by the Magistrate Judge, while [his] legal conclusions will be reviewed under the more lenient 'contrary to law' standard." *EEOC v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009) (alteration in original) (quoting *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd per curiam*, 19 F.3d 1432 (6th Cir. 1994) (unpublished table disposition)) (internal quotation marks omitted). A factual finding is clearly erroneous where the Court is left "with the definite and firm conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins.*

*Corp.*, 802 F.3d 793, 808 (6th Cir. 2015) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). A legal conclusion is contrary to law if it contradicts or ignores applicable precepts of law. *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014).

**DISCUSSION**

In its Objections to the Magistrate Judge's denial of UPG's motion to compel production of the spreadsheet, UPG argues that "[s]urely, the presence of substantial payments from Pincelli to Southern States over an extended period of time would make it more probable that the facility was not producing propane prior to May, 2014." [DN 86 at 6.] And, according to UPG, "the nonproduction of propane from the facility is a fact of consequence to Pincelli's force majeure defense. At the very least, such information would reasonably result in additional follow-up questions that could result in relevant evidence." [*Id.*]

In its Response, Pincelli states it "has already provided the Court with ample proof and sworn testimony from Kristin Ford, on behalf of Defendant Pincelli; Jed Weinberg, the owner of CGI Enterprises, who is intimately familiar with the facility at Manchester, Kentucky; and Bob Huddleston, an employee of Hayden Harper Energy KA, LLC (HHKA) (CGI Enterprises, LLC was a wholly owned subsidiary of HHKA) who is intimately familiar with the facility at Manchester, Kentucky, which demonstrate that no propane was produced from the subject facility prior to May 2014." [DN 90 at 7–8.] UPG claims that Weinberg and Huddleston's affidavits with respect to the facility's production of propane are, in substance, "a single sentence" and further argues that both Weinberg and Huddleston are related to CGI such that their affidavits are "self-serving." [DN 86 at 6–7.] Pincelli disagrees, arguing that the fact that

4

the affidavits were proffered by a CGI principal and an employee of a CGI affiliate does not make them self-serving when, in fact, CGI is not a party to this action. [DN 90 at 8.]

Federal Rule of Civil Procedure 26(b) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). Generally, "a plaintiff should not be denied access to information necessary to establish [its] claim," however, "neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 321 (6th Cir. 2015) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir.2007) (internal quotation marks omitted)).

Here, the Court finds that the existence and dates, or lack thereof, of damages payments made by Pincelli to Southern States may be relevant to Pincelli's force majeure defense. As Pincelli acknowledges in its Response, among the central issues in this case are "Do the doctrines of impossibility of performance and/or force majeure apply?" and "How and/or to what extent?" [DN 90 at 7.] Because Pincelli maintains that it could not perform on its contract with Southern States due to the fact that the Manchester facility did not produce propane until May 2014, and asserts the same defense in this case (provided that a contract with UPG is first established), the timing and existence of payments to Southern States is relevant to proving "any party's claim or defense" in this case. Fed. R. Civ. P. 26(b)(1). Specifically, the existence,

5

timing, and calculation of such payments, should they correspond or not correspond to the time period following May 2014, are relevant to proving or disproving Pincelli's claim regarding the Manchester facility's lack of propane production around that same time.

Moreover, the Court finds that, as Ford, Pincelli's Vice President, has admitted that Pincelli possesses the spreadsheet, there is minimal or no burden to Pincelli in producing it. Pincelli contends, however, that "much of the information sought in [UPG]'s requests is proprietary business information, which is confidential in nature and would cause immediate and irreparable harm to Defendant by its disclosure." [DN 90 at 5.] The Court acknowledges this concern and accordingly, at this time, will order that Pincelli produce only a redacted version of the spreadsheet, omitting the specific monetary amounts paid to Southern States but leaving intact the dates of each payment and any methods of calculation included therein.

## CONCLUSION

For the reasons stated herein, UPG's Objections to the Magistrate Judge's December 29, 2016 Order, [DN 86], are **SUSTAINED IN PART**. Pincelli **SHALL PRODUCE**, within **seven (7) days** of the issuance of this Order, a redacted version of the spreadsheet detailing its damages payments to Southern States. Pincelli may redact the specific monetary amounts paid, but must leave intact the dates of each payment and any methods of calculation included therein.

**IT IS SO ORDERED**.

Date:

cc: Counsel